UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

VINEYARD INVESTMENTS, LLC                                PLAINTIFF

VS.                                CIVIL ACTION NO. 3:09CV354TSL-FKB

THE CITY OF MADISON, MISSISSIPPI                         DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant The City of Madison, Mississippi for summary judgment, and on the cross-motion of plaintiff Vineyard Investments, LLC, for partial summary judgment on the issue of liability.  Each party has responded to the other's motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the City's motion should be granted and Vineyard's motion denied.

The following facts are not in dispute.[1]  On August 14, 2007, Vineyard entered into a lease agreement with Kroger Limited Partnership I (Kroger), the owner of certain retail property in Colony Crossing shopping center in Madison, with the intention of opening a package retail wine and spirits store known as "The Wine

---

[1]    The court's recitation of facts is drawn in part from the Mississippi Court of Appeals' opinion in <u>Vineyard Investments, LLC v. City of Madison</u>, 999 So. 2d 438, 439 (Miss. Ct. App. 2009).

Peddler."  Two weeks later, on August 29, 2007, Vineyard submitted an application for a building permit to the City of Madison, Mississippi for the purpose of improving the premises to be used as a package retail store.  Soon thereafter, the Mayor's office was contacted by a number of merchants in the Colony Crossing shopping center who were opposed to a second liquor store locating in the shopping center.  In response to these calls, the Mayor attended a meeting of the merchants to hear their concerns.  Following this meeting, the Board of Aldermen issued a resolution requesting a hearing in opposition to Vineyard's application to the State Tax Commission's Office of Alcoholic Beverage Control (ABC) for a liquor permit, based on the finding of the Mayor and board members that:

> (a) granting the aforementioned permit would not be in the best interest of the City or its citizens, (b) that a concentration of Package Retailers in the same above location is not necessary or desirable for the welfare of the municipality, and (c) that the use of such property for the purpose for which the application is proposed will not promote and foster the development and improvement of the community in which it is located and the civil, social, educational, cultural, moral, economic or industrial welfare thereof and specifically is not consistent with the overall land use goals and planning for the area.

At the City's request, a hearing was scheduled for December 4, 2007 before the State Tax Commission on Vineyard's application for a liquor permit.

In the meantime, at Vineyard's request, the subject of its permit application was placed on the October 2, 2007 agenda of the

2

regular meeting of the Mayor and Board of Aldermen.  The hearing was attended by representatives of Vineyard, as well as by members of the Colony Crossing Merchants Association, who objected to issuance of the requested permit on the grounds that having a second liquor store in the shopping center, particularly having one next door to a children's craft store and in relatively close proximity to a children's learning center, was detrimental to the "family" clientele the merchants wanted to attract.

On November 20, 2007, the Board of Aldermen voted unanimously to deny Vineyard's request for a building permit until after knowing the outcome of the December 4, 2007 hearing of the State Tax Commission concerning Vineyard's application for a liquor license.  Vineyard timely sought review of the City's decision in the Madison County Circuit Court, pursuant to Mississippi Code Annotated §11-51-75.  In connection with the appeal, the City presented, *inter alia*, attested copies of the minutes from the City's meetings which pertained to Vineyard's application, and correspondence to the City from the Colony Crossing Merchants Association.

A week later, on December 4, 2007, the hearing went forward before the State Tax Commission on Vineyard's application for a liquor license.  At that hearing, the Mayor testified that the City opposed issuance of a liquor license to Vineyard for its proposed Colony Crossing package store because in the City's

3

opinion, having two package retail stores in the same commercial development could cause economic hardship to the community; one could drive the other out of business, creating a vacancy, which could in turn imply poor economic health.  Also testifying at the hearing was the president of the Colony Crossing Merchants Association, who objected to the opening of a second liquor store in the shopping center for the same reasons it had previously expressed to the City.  Over the City's objections, the State Tax Commission approved Vineyard's application for its package retail permit on December 18, 2007.  Notwithstanding this, the City still refused to issue Vineyard a building permit, and Vineyard pressed forward with its appeal of the City's decision.

Initially, on December 18, 2008, the circuit court affirmed the City's denial of Vineyard's permit application, finding that the City's decision was supported by substantial evidence, was not arbitrary or capricious, was within the City's scope of powers, and did not violate the constitutional or statutory rights of Vineyard.  However, in an opinion issued January 20, 2009, the Mississippi Court of Appeals reversed, concluding that under applicable state law, the City did not have the discretion to deny the building permit as Vineyard had complied with all building codes and zoning ordinances, and otherwise finding no legally valid reason for the City's denial of Vineyard's building permit application.  See Vineyard Investments, LLC v. City of Madison,

999 So. 2d 438, 442 (Miss. Ct. App. 2009).[2]  That court specifically rejected the City's argument to the court that Vineyard's proposed use of the property as a package store would have been illegal since Vineyard did not possess a package retailer's permit at any point prior to the denial, and that the City was therefore warranted in denying the permit pursuant to the authority conferred by Mississippi Code Annotated § 17-1-19.[3] Ultimately, however, while Vineyard prevailed on its appeal of the

---

[2]  Although Vineyard also argued that the denial of the permit was an attempt to regulate an activity which was preempted by state law, and was in violation of Vineyard's constitutional right to use the property, the Mississippi Court of Appeals did not reach these issues, finding them moot by virtue of its ruling that the City had no basis under state law to deny Vineyard's permit application.  See Vineyard Investments, LLC v. City of Madison, 999 So. 2d 438, 442 (Miss. Ct. App. 2009).

[3]  That statute provides:
In case any building ... is constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure, or land, is used in violation of the zoning law or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of any county or municipality, in addition to other remedies, may institute any appropriate action or proceedings, to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure or land, or *to prevent any illegal act, conduct, business, or use in or about such premises*.
Miss. Code Ann. § 17-1-19 (emphasis added).  The court found that the denial of a permit under this statute would be permissible only where there was an actual improper use, or attempted improper use of the property; the City's denial, the court held, was not justified, as there was nothing in the record to suggest that Vineyard had any intention of actually using the property as a package retail store before obtaining an ABC permit.  Id. at 441.

City's decision, it was unable to open and operate its proposed package store in the premises, since its lease agreement with Kroger automatically terminated when Vineyard was unable to obtain a building permit from the City by April 1, 2008–which was a condition of the lease–and since Kroger declined to extend the lease or to enter a new lease with Vineyard.

Vineyard filed the present action against the City on June 16, 2009 pursuant to 42 U.S.C. § 1983, alleging that the City deprived it of rights under the United States Constitution.  More specifically, Vineyard contends the City's arbitrary and capricious rejection of its application for a building permit amounted to a deprivation of substantive due process, a deprivation of equal protection and tortious interference with business relations.  The parties have filed cross-motions for summary judgment as to each of Vineyard's claims.

<u>Substantive Due Process</u>

"The claim that a person is entitled to substantive due process means ... that state action which deprives [a person] of life, liberty, or property must have a rational basis–that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'" <u>Levitt v. University of Texas at El Paso</u>, 759 F.2d 1224, 1231 (5th Cir. 1985) (citation omitted).  <u>See also</u> <u>Brennan v. Stewart</u>, 834 F.2d 1248, 1256 (5th Cir. 1986) ("In these claims courts must determine

6

whether the deprivation of a life, liberty, or property interest is arbitrary or not reasonably related to a legitimate governmental interest.").

To state a substantive due process claim, a party must first establish that he had a valid "property interest" in a benefit that was entitled to constitutional protection at the time it was deprived of that benefit.  Vineyard asserts it had a "protected property interest in a building permit" and that the City's refusal to issue the permit was arbitrary and capricious, and violated Vineyard's substantive due process rights under the Fourteenth Amendment.  In support of its motion, the City initially argues that Vineyard's property interest in the building permit is insufficient to merit substantive due process protection, but it submits further that even if Vineyard had a protected property interest, the decision to deny the permit was not arbitrary or capricious.

The City's principal challenge to Vineyard's assertion of a protected property interest in the requested building permit is based on the City's contention that while property interests created by state law are protected by procedural due process, only property interests *created by the United States Constitution* are protected by substantive due process.  As the primary support for this position, the City relies on Justice Powell's statement in his concurrence in Regents of University of Michigan v. Ewing,

that "[w]hile property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972), substantive due process rights are created only by the Constitution." 474 U.S. 214, 229, 106 S. Ct. 507, 515, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring). In making this argument, the City acknowledges that the Fifth Circuit in Schaper v. City of Huntsville, 813 F.2d 709 (5th Cir. 1987), found that a state-created property interest in continued employment was entitled to substantive due process protection. Yet the City submits that whereas the Fifth Circuit has recognized the principle that only the federal constitution can create a right which merits substantive due process protection, it merely carved out a single exception to this principle when the right is one for continued public employment. Clearly, however, the distinction suggested by the City is unfounded. The argument overlooks the fact that in Schaper, the Fifth Circuit specifically interpreted the majority opinion in Ewing as implying "that substantive due process rights may be created the same way procedural due process rights are created, by state law." Id. at 716. But even more, the City's position is directly contradicted by numerous Fifth Circuit cases holding that substantive due process claims are based on the arbitrary denial of state-created property rights. One such case

8

involved the City of Madison itself.  In <u>Bryan v. City of Madison</u>, the court wrote:

> In order to establish either a substantive or a procedural due process violation by claiming denial of a property right, Bryan must first establish a denial of a constitutionally protected property right.  <u>See</u> <u>Spuler v. Pickar</u>, 958 F.2d 103, 107 (5th Cir. 1992) (stating that a prerequisite to a substantive due process claim is the establishment of a constitutionally protected property right); <u>Jackson Court Condominiums, Inc. v. City of New Orleans</u>, 874 F.2d 1070, 1074 (5th Cir. 1989)(requiring a showing of a property right as a basis for a procedural due process violation).  Such a showing, as we noted in <u>Schaper v. City of Huntsville</u>, 813 F.2d 709 (5th Cir. 1987), must be made by reference to state law.  "The Constitution does not create property interests; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'"  <u>Schaper</u>, 813 F.2d at 713 (quoting <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)); <u>see also</u> <u>Bishop v. Wood</u>, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976) (stating that "a property interest in employment can, of course, be created by ordinance or by an implied contract ... in either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law").

<u>Bryan v. City of Madison, Miss.</u>, 213 F.3d 267, 274–275 (5th Cir. 2000).  Accordingly, the court rejects the City's contention that Vineyard's claim fails for want of a property interest emanating from the federal constitution, rather than from state law.[4]

---

[4]    This is not to say that the source of the claimed property interest is irrelevant in substantive due process analysis.  While the Fifth Circuit has held that state-created property interests are entitled to substantive due process protection, it has "also discerned a difference between those rights that emanate from the Constitution and those that arise under state law, such as [a] property interest in [continued] employment."  <u>Shearer v. Bowen</u>, No. 98-30357, 2000 WL 729334, 8 (5th Cir. 2000) (citing <u>Schaper v. City of Huntsville</u>, 813 F.2d

A protected property interest arises where there is "a legitimate claim to entitlement" as opposed to a mere subjective expectancy.  See Skidmore v. Shamrock Independent School Dist., 464 F.2d 605, 606 (5th Cir. 1972) (citing Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)).  "A claim to entitlement arises, for these purposes, when a statute or regulation places substantial limits on the government's exercise of its licensing (or permitting) discretion.  No discretion in the official and a reasonable expectation in the citizen are central elements of a protected property interest."  Hampton Co. Nat. Sur., LLC v. Tunica County, Miss., 543 F.3d 221, 226 (5th Cir. 2008) (citing Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005)); see also Chavers v. Morrow, 354 Fed. Appx. 938, 941, 2009 WL 4609841, 3 (5th Cir. 2009)("To determine whether statutes or regulations create a protected property interest, we must ask whether they place substantive limitations on official discretion.")(internal

709, 718 (5th Cir. 1987)).  "In the latter case, a claim alleging deprivation of substantive due process is often nothing more than a regurgitation of a procedural due process claim," id., and in such cases, the court "regard[s] the availability of a prompt post-termination administrative hearing" may warrant rejection of a plaintiff's substantive due process claim, id.  In contrast, "when a plaintiff alleges that state action has violated an independent substantive right (under the Constitution), he asserts that the action itself is unconstitutional.  If so, his rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action," so that the availability of notice and a hearing is therefore irrelevant.  Schaper, 813 F.2d at 717 (citing Augustine v. Doe, 740 F.2d 322, 326-27 (5th Cir. 1984)).

quotations and citations omitted); cf. Horton v. City of
Smithville, 117 Fed. Appx. 345, 348, 2004 WL 2810186, 2 (5th Cir.
2004) ("discretionary statutes do not give rise to
constitutionally-protected property interests"); Baldwin v.
Daniels, 250 F.3d 943, 946 (5th Cir. 2001) (finding appellant had
no property interest where statute committed decision to the
discretion of the responsible officer).

"In determining whether statutes and regulations limit
official discretion, the Supreme Court has explained that we are to
look for 'explicitly mandatory language,' i.e., specific directives
to the decisionmaker that if the regulations' substantive
predicates are present, a particular outcome must follow."
Chavers, 354 Fed. Appx. at 941, 2009 WL 4609841, at 3. Consistent
with these principles, courts in cases considering whether
applicants for building permits have a property interest in the
issuance of permits have focused on whether county or municipal
officials had discretion to deny the permit. Where no discretion
exists, applicants have consistently been held to enjoy a property
interest in issuance of permits. See, e.g., Littlefield v. City of
Afton, 785 F.2d 596, 601-02 (8th Cir. 1986) (recognizing under
Minnesota law, property interest arose as applicant was entitled to
building permit upon compliance with applicable laws and codes
because municipality had no discretion to deny it), overruled on
other grounds, Chesterfield Dev. Corp. v. City of Chesterfield, 963

F.2d 1102, 1104 n.2 (8th Cir. 1992); <u>Scott v. Greenville Cty.</u>, 716 F.2d 1409, 1418 (4th Cir. 1983) (property interest arose where applicant was entitled under South Carolina law to issuance of building permit upon presentation of an application and plans showing use expressly permitted under then-current zoning ordinance); <u>cf</u>. <u>Walz v. Town of Smithtown</u>, 46 F.3d 162, 168 (2d Cir. 1995) (homeowner had property interest in an excavation permit as superintendent of highways had no discretion to deny if application stated the nature, location, extent and purpose of the proposed excavations).  Conversely, no property interest has been found where discretion lies.  <u>See</u>, <u>e.g.</u>, <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 192-93 (2d Cir. 1994) (landowners had no property interest in enforcement of zoning laws for adjacent property, since municipal officials had broad discretion in determining whether to grant or deny building permit, site plan and variances); <u>RRI Realty Corp. v. Incorporated Village of Southampton</u>, 870 F.2d 911, 918-919 (2d Cir. 1989)(no property interest existed in building permit because town officials had discretion to grant or deny the permit); <u>cf</u>. <u>Jackson Court Condominiums, Inc. v. City of New Orleans</u>, 665 F. Supp. 1235, 1246 (E.D. La. 1987) (plaintiff had no property interest in variance from zoning ordinance where zoning authority had broad discretion to deny requests for variance).

The Mississippi Court of Appeals has held that since Vineyard was in compliance with all building codes and zoning ordinances when it applied for the building permit (and there was and is apparently no dispute about that), then under applicable Mississippi law, the City had no discretion to deny the permit. See Vineyard Investments, LLC v. City of Madison, 999 So. 2d 438, 439 (Miss. Ct. App. 2009). From this, it follows that Vineyard had a property interest in issuance of a building permit.

Once it is determined that a state has deprived an individual of a property interest, the court must determine whether the government action that gave rise to the deprivation is supported by a rational basis. Brennan v. Stewart, 834 F.2d 1248, 1257-58 (5th Cir. 1988). Whether a particular action has the requisite rational relationship to a legitimate government interest is a question of law to be decided by the court. FM Properties Operating Co. v. City of Austin, 93 F.3d 167, 172 (5th Cir. 1996).

The Fifth Circuit has explained that in reviewing a claim that a zoning or other land-use decision by a state lacked a rational basis and hence denied substantive due process, "a court could pursue either of two analytical tracks. A regulatory decision can be legislative or it can be adjudicative, and it will be reviewed differently depending on which category it is placed into." Shelton v. City of College Station, 780 F.2d 475, 479 (5th Cir.) (en banc), cert. denied, 477 U.S. 905, 106 S. Ct. 3276, 91 L. Ed.

13

2d 566 (1986).  "The most obvious difference between the two tracks is in how the judiciary reviews the facts behind the decision at issue."  Id.  Under the adjudicative model, actions by state officials are tested by historical facts and "adequate evidence found within a defined record."  Id.  Consequently, in determining what interest prompted a particular action, a court using the adjudicative model must focus on what actually motivated the conduct.  Id.  See also Mahone v. Addicks Utility Dist. of Harris County, 836 F.2d 921, 934 (5th Cir. 1988) (summarizing Shelton dichotomy).  In contrast, if the action is evaluated under the legislative model, the court's inquiry asks only whether there was "a conceivable factual basis for the specific decision made."  Shelton, 780 F.2d at 479.  "In practical terms, therefore, evidence that an official was motivated by an illegitimate purpose when he took an action cannot, under the legislative model, invalidate the official's action.  Instead, if a court is able to hypothesize a legitimate purpose to support the action, the action must be treated as valid."  Mahone, 836 F.2d at 934.  See also FM Properties Operating Co., 93 F.3d at 173-174 (where challenge is to legislative, or quasi-legislative zoning decisions, "the 'true' purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis.  The question is only whether a rational relationship exists between the [policy] and a conceivable

14

legitimate governmental objective."); Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 388 (5th Cir. 2001) (recognizing that under Shelton, inquiry into City's motivation for enacting zoning ordinance, a legislative act, was not part of rational basis review, since when the challenge is to a legislative act, "courts are free to hypothesize a rational basis for the action").  While "the line between legislation and adjudication is not always easy to draw," 75 Acres, LLC v. Miami-Dade Cty., 338 F.3d 1288, 1296 (11th Cir. 2003) (quoting LC&S, Inc. v. Warren County Area Plan Comm'n, 244 F.3d 601, 603 (7th Cir. 2001)), it is reasonably clear in this case that the City's denial of the permit was adjudicative, not legislative.

The Fifth Circuit has not articulated a test for distinguishing between legislative and adjudicative action, but relevant considerations can be gleaned from the court's decisions. In Shelton, the court observed that the enactment of zoning ordinances is generally a legislative function.  Beyond that, the proper categorization of land-use decisions can be more difficult, and typically involves consideration of the function and powers of the decisionmaker to make the determination, including the extent of any discretion it has in the matter; whether the decision involved the promulgation of legislative policy as a defined and binding rule of conduct or instead the application of previously established or defined policies or standards; and whether the

15

challenged  decision is one that applies prospectively to the

general community or is instead directed specifically at the

plaintiff.

For example, in <u>County Line Joint Venture v. City of Grand

Prairie, Tex.</u>, 839 F.2d 1142, 1144 (5th Cir. 1988), the court

concluded that the city's enactment of an ordinance providing for

automatic extinguishment of a specific use permit upon six months

of nonuse was a legislative, not adjudicative act, reasoning as

follows:

> The enactment of the ordinance was a result of a purely
> legislative act by the city council of Grand Prairie, an
> elected body which wields broad power to make a decision
> in the area of city planning and zoning.  The ordinance
> in question applies generally to all SUPs in existence
> and those thereafter created.  County Line presented no
> evidence that the city council aimed the ordinance
> specifically at County Line rather than calling for
> termination of all SUPs which had suffered non-use for a
> period of at least six months.  Because the city council
> possesses extensive legislative powers and had enacted an
> ordinance general in scope, we must apply the legislative
> model to the ordinance here in question....

<u>Id</u>. at 1146; <u>see id</u>. ("Conduct of a municipal body is likely to be

deemed legislative when an elected group, such as a city council,

makes a general zoning decision which applies to a large group of

interests.  Conversely, a municipal body's action may be more

likely termed adjudicative if an appointed group, such as a zoning

board, makes a specific decision regarding a specific piece of

property.").

16

In <u>Shelton</u>, from which the court's reasoning in <u>County Line</u> was derived, the Fifth Circuit concluded that a zoning board's denial of an individual request for a variance from a zoning ordinance, while not strictly legislative, was nevertheless "quasi-legislative" and thus properly analyzed under the legislative model of rationality review.  Summarizing the opinion in <u>Shelton</u>, the court in <u>Mahone</u> wrote:

> In <u>Shelton</u>, we recognized that when a zoning board acts on an individual request for a variance, it appears in some sense to be making both a legislative and a judicial decision.  Because its apparent focus is on the individual case before the board, the process of determining whether a variance should be granted has distinctly adjudicative characteristics.  The court found, however, that during the apparently adjudicative process, the zoning board was motivated by legislative concerns–its role was to "decid[e] the best course for the community" and not necessarily to "adjudicat[e] the rights of contending petitioners."  <u>Id</u>.  Because of the way in which the appearance of adjudication mixed with the legislative purpose, the court termed the board's actions both "quasi-legislative" and "quasi-judicial."  In determining whether their actions should be reviewed under either the legislative or adjudicative model, however, we were not at all ambivalent.  As we explained, "that a state may choose to make a legislative decision by a process that resembles adjudication is not our immediate concern.... The states are free to make zoning decisions in ... a 'quasi- judicial' manner.  But neither the Supreme Court nor this court has ever suggested that such a choice by the state works a metamorphosis of the Constitution's demand for minimum rationality."  <u>Id.</u> at 481-82.  Consequently, we concluded that the legislative model–which permits a decision to be justified by hypothesized purposes–must be used to determine the constitutional validity of a zoning board's actions.

<u>Mahone</u>, 836 F.2d at 934 (quoting <u>Shelton</u>).

17

In Kaplan v. Clear Lake City Water Authority, 794 F.2d 1059 (5th Cir. 1986), the court applied Shelton's analysis to decisions made by state-created water authorities, described as political subdivisions formed under Texas law to provide water and sanitary sewer services to the area within its boundaries.  Id. at 1060-61. The court observed that while water districts did not possess the same broad governmental powers held by zoning boards, Texas law did give the districts some discretionary power to determine who gets services and when, and based on that discretion, the court found that the water authorities possessed "limited legislative or quasi-legislative functions" and that their decisions were properly termed legislative.  Id. at 1064.  Even though the court acknowledged that state law "place[d] restrictions on the exercise of that power by indicating that sound engineering practices, economics, and orderly development are considerations which enter into the decisionmaking process," it held that the power of discretionary review alone was sufficient to invoke the legislative model.  Id.  See Mahone, 836 F.2d 921 (5th Cir. 1988) (discussing Kaplan).

In the case at bar, the challenged decision was made by an elected body which indisputably has broad powers with respect to zoning decisions.  What is at issue here, though, is not a zoning decision--be it the establishment of a zoning law or a decision whether to permit a variance from a zoning law--but rather the

18

denial of a building permit to a specific applicant for a proposed business that complied with all of the City's building codes and zoning ordinances.  Under state law, as has now been determined by the Mississippi Court of Appeals, the City had no discretion to deny Vineyard's application for a permit.  Given these circumstances, the court concludes that the City's decision was adjudicative, not legislative, and therefore subject to Shelton's adjudicative rationality analysis.  Indeed, courts have consistently held that the issuance of building permits in like circumstances is a non-legislative act.  See Koorn v. Lacey Tp., 78 Fed.Appx. 199, 204, 2003 WL 22366923, 4 (3d Cir. 2003) (noting in dicta that issuance of building permits is a non-legislative act, which is analyzed under a separate thread of substantive due process from legislative acts); Bateson v. Geisse, 857 F.2d 1300, 1304 (9th Cir. 1988)(city council members' decision to reject plaintiff's building permit which "was directed specifically and solely at a single individual" and did not "appl[y] to the general community" was non-legislative act); Scott, 716 F.2d at 1423 (4th Cir. 1983) (finding members of city council did not act in their legislative capacity, but rather in executive capacity in issuing order to county planning commission to delay consideration of building permit); see also 8A Eugene McQuillian, The Law of Municipal Corporations § 25.217 (3d ed. 2008) ("[A] zoning ordinance vesting in the municipal council the power to determine

whether a building permit should be granted ... ordinarily is
regarded as administrative, rather than legislative in character.")
(cited in Jaggers v. City of Alexandria, No. 08-5213, 2009 WL
233244, 5 (6th Cir. 2009)).

The adjudicative mode of analysis asks not whether there was
some conceivable rational basis for the challenged decision, but
requires a finding as to what actually motivated the decision, and
then asks whether this is rationally related to a legitimate
governmental purpose.  In this case, the record evidence reflects
that the reasons the City articulated for denying the permit
remained constant from the time the issue first arose through the
hearing before the State Tax Commission.  In the September 18, 2007
resolution by the Board of Aldermen to oppose Vineyard's
application for a liquor permit, the Board found that granting
Vineyard's permit "would not be in the best interest of the City or
its citizens," that "a concentration of Package Retailers in the
(shopping center) [was] not necessary or desirable for the welfare
of the municipality," and that the use of such property for a
liquor store "[would] not promote and foster the development and
improvement of the community in which it is located and the civil,
social, educational, cultural, moral, economic or industrial
welfare thereof and specifically is not consistent with the overall
land use goals and planning for the area."  Along these lines, the
Mayor testified at the State Tax Commission hearing on Vineyard's

20

liquor permit application that the City opposed issuance of a
liquor license because the City believed having two package retail
stores in the same commercial development could cause economic
hardship to the community, as one could drive the other out of
business, creating a vacancy, which could in turn imply poor
economic health.  Also testifying at the hearing was the president
of the Colony Crossing Merchants Association, whose concerns had
prompted the City's initial response in opposition.  He complained
that the opening of a second liquor store in the shopping center
would be inimical to the diverse, family-oriented clientele the
merchants of the shopping center hoped to attract.

     The court does not understand Vineyard to contend that these
would not be rational reasons for a *zoning* decision by a city
limiting the number and/or location of liquor stores.  But Vineyard
points out that the City's decision here was not a *zoning* decision,
over which the City might arguably have had some discretion.
Instead, according to Vineyard, its application should have
involved a mere administrative determination of whether its
building permit application satisfied existing building codes and
zoning ordinances, and that it was entitled to have its application
approved once it was determined that the application complied with
those existing standards and ordinances.  Vineyard submits that
given the City's lack of discretion in the matter, it necessarily
follows that the City's denial of the application was arbitrary and

capricious, and a violation of Vineyard's due process and equal protection rights.  In other words, Vineyard seems to contend that because state law gave the City no discretion to deny the permit, it follows that its denial of the permit was arbitrary and capricious for due process purposes.  Vineyard's position on this point is not well-founded.  The City may have had no discretion to deny the building permit as a matter of *state law*; but "a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation.  [Likewise, not] every apparent transgression of state law by a state agency triggers the operation of the federal equal protection clause."  Stern v. Tarrant County Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir. 1985); see also Smith v. Picayune, 795 F.2d 482, 488 (5th Cir. 1986) ("the guarantees of the fourteenth amendment ... its promise of protection from arbitrary or irrational state action, are guarantees that turn on federal constitutional standards of ... rationality rather than on state standards").

For federal due process purposes, "government action comports with substantive due process if the action is rationally related to a legitimate governmental interest."  FM Prop. Operating Co., 93 F.3d at 174.  In the court's opinion, notwithstanding the context or manner in which the decision was made, the City's actions satisfy this standard.  The evidence cited by the City demonstrates that the City was responding to concerns about the impact of

another liquor store in the shopping center on the public health
and welfare, matters unquestionably of governmental interest.

Vineyard contends that there exists a genuine issue of
material fact as to whether the reasons the City has offered for
its decision to deny the building permit to Vineyard were its true
reasons, and points to evidence which it contends suggests that
Mayor Butler denied the issuance of the permit to benefit a friend,
Jim Streetman.  It notes that Streetman owned an interest in the
liquor store that already operated in the Colony Crossing shopping
center and contends that the Mayor "was doing a favor for a him" by
preventing competition to his business.  However, Vineyard's
position is based entirely on conjecture, grounded on an inference
that the court concludes is not warranted by the evidence.  There
is no evidence tending to show that any friendship between Mayor
Butler and Streetman played a role in the Mayor and Board of
Aldermen's unanimous decision to deny Vintage's building permit.
In her sworn testimony, the Mayor denied she was doing a favor for
Streetman in denying Vintage's permit and testified that had
Vineyard been the first liquor store in the shopping center, she
would have denied issuance of a building permit to any other
applicant attempting to open a liquor store in the same location.
There is no evidence to suggest otherwise.

23

In sum, therefore, the court concludes that based on the undisputed facts of record, Vineyard cannot prevail on its substantive due process claim, which will be dismissed.

Equal Protection

Vineyard alleges to the extent the City has claimed it denied Vineyard a building permit because Vineyard had not yet received a permit from the State Tax Commission to operate a liquor store at the time Vineyard submitted its application for a building permit, the City violated Vineyard's equal protection rights, since the City had previously issued building permits to four other liquor stores within the City without requiring any of them to first obtain an ABC permit from the Tax Commission to operate a liquor store.

> [T]he Fourteenth Amendment "requires that all persons
> subjected to ... legislation shall be treated alike,
> under like circumstances and conditions, both in the
> privileges conferred and in the liabilities imposed."
> Hayes v. Missouri, 120 U.S. 68, 71–72, 7 S. Ct. 350, 30
> L. Ed. 578 (1887).  When those who appear similarly
> situated are nevertheless treated differently, the Equal
> Protection Clause requires at least a rational reason for
> the difference, to assure that all persons subject to
> legislation or regulation are indeed being "treated
> alike, under like circumstances and conditions."  Thus,
> when it appears that an individual is being singled out
> by the government, the specter of arbitrary
> classification is fairly raised, and the Equal Protection
> Clause requires a "rational basis for the difference in
> treatment."  Olech, 528 U.S., at 564, 120 S. Ct. 1073.

Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 602, 128 S. Ct. 2146, 2153, 170 L. Ed. 2d 975 (2008).  To prevail on its equal protection claim, Vineyard must establish that (1) it has been

intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment. See id.[5] See also Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005) (stating that in "class of one" equal protection case, "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lacked any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain") (citing Village of Willowbrook v. Olech, 528 U.S. 562, 565, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

In support of its motion, the City argues that it is entitled to summary judgment on Vineyard's equal protection claim both because Vineyard cannot establish that any similarly situated package retail store was treated differently, and because there was

---

[5]     As the City notes, in traditional equal protection claims, a plaintiff must show that a state actor intentionally discriminated against him or her because of membership in a protected class, Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999), which is not the case here, as Vineyard does not claim to belong to a protected class.  However, in Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), the Supreme Court held that equal protection claims can be brought by a "'class of one,' where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  To prevail on such a cause of action, a plaintiff does not have to allege membership in a protected class or group.  Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000), overruled in part on other grounds by, McClendon v. City of Columbia, 305 F.3d 314, 328–29 (5th Cir. 2002)(en banc).

a rational basis for any difference in treatment.  In the court's opinion, the City's position on both points has merit.

The documentary evidence of record suggests that the City denied Vineyard's building permit on November 20, 2007 pending the outcome of Vineyard's application for a liquor license, the issuance of which the City was actively opposing because it believed that having two package retail stores in the same commercial development could cause economic hardship to the community, and because it found that having two liquor stores in the Colony Crossing Shopping Center would change the character of the development and undermine its family atmosphere.  The opinion of the Mississippi Court of Appeals indicates that the City took the position in its argument to that court that it denied the permit because Vineyard had not yet gotten its liquor license when it applied for a building permit, and because a building permit could not be issued for a business that could not be lawfully operated.  See Vineyard Investments, LLC v. City of Madison, 999 So. 2d at 442.  While this was an additional reason advanced by the City during the appeal process to explain its decision, it is clear from the record that this was not the only reason for the City's decision.[6]  And the fact is, in light of the reasons offered by the City, Vineyard was not similarly situated to the other applicants.

---

[6]     This is demonstrated not only by the documentary evidence, but also by the fact that the City persisted in its refusal to issue a permit even after the State Tax Commission granted Vineyard's application for a liquor license.

Vineyard, as the City notes, was the sole applicant which sought to open a liquor store in a development that already contained an operating liquor store, and further, was the only applicant which sought to open a liquor store next to a children's store and very near a children's learning center wherein another liquor store was operating nearby.  The court agrees with the City that these factors make Vineyard and the other stores dissimilar and negate Vineyard's equal protection claim.[7]

Tortious Interference with Business Relations

Vineyard asserts a cause of action for tortious interference with business relations against the City via § 1983 based on its allegations that the City's unlawful denial of a building permit was a "deliberate course of conduct under color of law which tortiously interfered with Plaintiff's right to conduct a business pursuant to a lease agreement between Plaintiff and Kroger."  The City urges that summary judgment is warranted inasmuch as there is no federal right to be free from tortious interference with business relations.  In this regard, the City is correct.

Section 1983 does not create substantive rights, but rather provides a civil remedy for the deprivation of constitutional or

---

[7]     These dissimilarities also explain the basis for the difference in treatment, which the court has concluded was rationally related to the City's legitimate governmental interests.  And in this vein, the court notes that the rationality analysis applicable to Vineyard's substantive due process also applies to Vineyard's equal protection claim.  See Mahone v. Addicks Utility Dist. of Harris County, 836 F.2d 921, 935 n.14 (5th Cir. 1988).

other rights created by federal law.  Southwestern Bell Telephone, LP v. City of Houston, 529 F.3d 257, 260 (5th Cir. 2008) ("[§]1983 confers no substantive rights, but merely provides a remedy for the violation [, by a person acting under color of state law,] of rights secured under the Constitution and laws of the United States") (quoting Kirchberg v. Feenstra, 708 F.2d 991, 1000 (5th Cir. 1983) (emphasis added)).  Further, despite Vineyard's assertion that the unlawful denial of a permit is analogous to a claim of tortious interference, there clearly is no support for the position that the United States Constitution or any other federal law guarantees the right to be free from the tortious interference with a business relationship.  Khan v. Gallitano, 180 F.3d 829, 835 (7th Cir. 1999) (plaintiff "failed to show why the right to be free from tortious interference by state actors is a fundamental right deeply rooted in our history and tradition or implicit in the concept of ordered liberty" or "why having a state-law remedy for whatever injury the defendants caused her is inadequate under the federal constitution"); BPNC, Inc. v. Taft, 147 Fed. Appx. 525, 530 (Aug. 16, 2005) ("tortious interference with contract . . .is not a right that arises under federal law").

Conclusion

Based on all of the foregoing, it is ordered that the City's motion for summary judgment is granted, and it is ordered that Vineyard's motion for summary judgment on liability is denied.

28

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 23rd of November, 2010.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE